FEIST v. PETERS.

(Supreme Court, Appellate Term.   January 21, 1910.)

1. LANDLORD AND TENANT (§ 172*)—BREACH OF LEASE—FAILURE TO FURNISH HEAT.
    Where the landlord fails to furnish heat as required by the lease, the tenant may vacate the premises.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 695–703;   Dec. Dig. § 172.*]

2. WITNESSES (§ 369*)—CREDIBILITY—INTEREST IN CONTROVERSY.
    The janitor, whose duty it is to operate the furnace for the heating of a building, is not an entirely disinterested witness in an action for rent, wherein the defense is eviction by failure to properly heat an apartment.
    [Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1187;   Dec. Dig. § 369.*]

3. LANDLORD AND TENANT (§ 231*)—CONVICTION—FAILURE TO FURNISH HEAT —SUFFICIENCY OF EVIDENCE.
    Evidence *held* to show breach of lease by the lessor's failure to properly heat the leased apartment, justifying the lessee in vacating the same.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. 934;   Dec. Dig. § 231.*]

    Lehman, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Julia T. Feist against Charles J. Peters.   Plaintiff had judgment, and defendant appeals.   Reversed.

Argued before GIEGERICH, DAYTON, and LEHMAN, JJ.

Charles Oechler (J. Sidney Bernstein, of counsel), for appellant.
Lewis S. Posner, for respondent.

GIEGERICH, J.   The action is to recover rent for the month of March, 1909, claimed to be due under a lease of the second and third floors of a building known as No. 2295 Seventh avenue, borough of Manhattan, city of New York.   The only question raised on the trial was whether there had been an eviction on account of the failure to furnish heat as required by the lease between the parties.   This lease, which was in writing, provided that the premises were leased for the purposes of a club room, and the plaintiff agreed thereby "to furnish heat for said premises free of charge  * * *  and in such quantities and at such times as may be necessary for the uses and purposes" of the defendant.

It appears that the defendant had placed one Harvey B. Taylor in charge of the premises, and that Taylor and his family were occupying the third floor at the time the alleged eviction took place. What Taylor's connection with the club was does not clearly appear.   In fact, it is rather apparent that neither of the parties on the trial were inclined to go into the question of the purposes of this club.   Mr. Taylor testified that there was no heat in the building on the 7th, 8th, and 9th days of February, 1909; that the rooms were cold and disagreeable; and that on the 10th he and his family moved

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

from the premises. His wife testified that there was no heat on the 7th, and very little on the 8th. He is also corroborated by the testimony of a Miss Clara Levy, another tenant in the building at that time, who says she was not in the building on the 7th, which was Sunday, but was there on the 8th, and that it was very cold in the apartment on that day. It also appeared from the testimony of the foregoing witnesses that on the days in question the plaintiff did not have sufficient coal on hand with which to heat the furnace, that complaints were made to the plaintiff as well as to her janitor of the absence of heat in the apartments occupied by them, and that nothing was done to remedy the situation until the day Mr. Taylor and his family moved from the premises, when coal was brought to the building.

The trial justice gave judgment in favor of the plaintiff, which determination he based upon the testimony of the colored janitor, whose duty it was to take care of the furnace which furnished the heat for these premises. He testified in substance that he maintained a fire there so far as necessary all through the 7th, 8th, and 9th of February. He did not go up into the building itself, and consequently did not know the temperature there. He further testified that there was a sufficient supply of coal on hand to heat the building, and no complaints were made to him by Mr. Taylor or by anybody about the lack of heat. This janitor was the only person whose testimony was in any way favorable to the plaintiff as far as the question of heat was concerned. In giving judgment for the plaintiff, the trial justice said that he thought this was a deliberate attempt to break a lease, and that all the witnesses seemed to be interested except this colored janitor.

So far as concerns the defendant's desire to escape from this lease, that is, of course, immaterial upon the question of his right to do so. If the plaintiff on her part failed to keep any of the terms of the lease, the defendant was equally at liberty to avail himself of such default, whether he was glad or sorry to do so. With respect to the relation of the janitor to the controversy, the court was not warranted in regarding him as an entirely disinterested witness. He is still in the employment of the plaintiff. It was part of his duty to see that the fire in the furnace which heated this building was kept up. If it were established that he had neglected that duty, he would be exposed to the displeasure of his employer and to discharge. Furthermore, one portion of his testimony discredits, and, indeed, it might be said contradicts, his testimony that he kept the apartments properly warmed. When asked how much coal he had put on the fire during the three days in question he testified as follows:

"Q. You made a fire on the 7th day of February, 1909? A. No, sir. Q. You didn't make a fire? A. No, sir. Q. Did you make a fire on the 8th? A. That fire don't go out. Q. Did you put any coal on on the 8th day of February, 1909? A. Yes, sir. Q. Did you put any coal on on the 9th? A. Yes, sir; every day. Q. How much coal did you put on on the 7th? A. Not more than a shovel of coal. Q. What time of the day did you put that on? A. Twelve or one o'clock. Q. Did you put any more on the whole day of the 7th—did you put any more on? A. Not until the night. Q. What time of night? A. Five, half past five, six. Q. How much did you put on? A. Just enough to

keep it. Q. When did you put coal on the fire on the 8th? A. I usually go there every morning at eight o'clock. Q. When did you put it on on the 8th? A. About twelve, half past twelve, and about half past five. Q. How much did you put on at eight o'clock when you went there? A. About a shovel, or half a shovel, a shovel and a half, or two shovels."

The house was four stories high, and the weather during the days in question was shown to have been cold. The amount of coal the witness states he used was manifestly inadequate to heat such a building in such weather.

The respondent contends that it affirmatively appears in evidence that no club was in session in the floors in suit on the 8th or 9th of February, and that since the apartments were let for club purposes only there was a failure of proof on the part of the defendant that the plaintiff had failed to furnish sufficient heat for the premises in question on the days above mentioned. It does not appear, however, that it was the understanding of the parties that the floors in controversy were to be used exclusively as a place for holding stated meetings of the club. The occupation of the upper floor by Mr. Taylor and his family seems to be a complete answer to the contention that such was the understanding of the parties to the lease.

It cannot be said that there was any substantial contradiction of the testimony which showed the building was not properly heated, and the judgment in favor of the plaintiff should be reversed as against the weight of evidence.

The judgment should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

DAYTON, J., concurs. LEHMAN, J., dissents.